## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT H. PRESCOTT,

        Petitioner,                      Case Number: 2:08-cv-11861

v.                                           HONORABLE ARTHUR J. TARNOW

THOMAS BELL,

        Respondent.
_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Robert H. Prescott has filed a *pro se* petition for a writ of habeas corpus. Petitioner is currently incarcerated at the Parr Highway Correctional Facility in Adrian, Michigan. He challenges the constitutionality of his 2006 conviction for one count of assault with intent to do great bodily harm less than murder. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's conviction arises from events that occurred on August 5, 2005, in Ingham County. Cara Summerville testified that, on that date, she was assaulted by the Petitioner. She and the Petitioner had been dating for eight months, and he regularly spent the night in her home.

On the evening of August 4, 2005, an argument broke out between Summerville and the Petitioner. The argument carried over to the next day. At approximately 2:00 pm on August 5, the argument became physical. Summerville left her home and was followed by the Petitioner. Summerville testified that the Petitioner followed her into the street, where he hit her and knocked her to the ground. The Petitioner then kicked her in the face. When asked how many times the Petitioner kicked her, she answered, "Once." Tr., 1/20/06, p. 58.

Brianna Summerville, the victim's daughter, also testified. In her testimony, she said that she was at home when the argument between her mother and the Petitioner broke out. When her mother ran outside, the Petitioner followed her. Brianna followed them outside, but by the time she got there, her mother was already on the ground. Then she saw the Petitioner kick her mother in the face. When asked how many times the Petitioner kicked her mother, she said, "One." Tr., 1/19/06, p. 47. Brianna then ran to a neighbor's house and called 911.

While these events were taking place, Barbara Contreras was watching from down the street. Contreras was taking care of her daughter's home while she was away on vacation. She was on the front porch when she heard the victim scream. She looked up and saw the Petitioner kicking Summerville. In her testimony, Contreras stated that the Petitioner kicked Summerville "about 10 times and then he left and started across the street, then he turned around and came back and kicked her a couple more times." Tr., 1/20/06, p. 95.

After the Petitioner fled the scene, the paramedics and the police arrived. The first police officer on the scene was Officer Michelle Burkhardt. Officer Burkhardt testified that she interviewed the witnesses at the scene and then accompanied Summerville to Ingham Regional Medical Center. While she was at the hospital, Officer Burkhardt met with Officer Angelo Sukovich, who provided her with a pair of steel-toed boots worn by the Petitioner during the assault on Summerville.

Later, Officer Sukovich testified that she had accompanied the Petitioner to the hospital after arresting him because he was complaining of chest pain. When she heard from Officer Burkhardt that the Petitioner had kicked the victim, she decided to collect his boots as evidence.

## II. Procedural History

Following a bench trial in Ingham County Circuit Court, Petitioner was convicted of one count of assault with intent to do great bodily harm less than murder and one count of resisting and obstructing a police officer. On May 3, 2006, he was sentenced as a habitual offender to five to fifteen years imprisonment for the assault and six months imprisonment for resisting and obstructing, sentences to be served concurrently.

Petitioner, through his attorney, filed an application for leave to appeal in the Michigan Court of Appeals presenting the following claims:

> I. The defendant is entitled to resentencing where offense variable 10 was wrongly scored and the resulting sentence is outside the correctly scored guidelines range.

Petitioner then filed a Supplemental Brief, in pro per, presenting the following claims:

> I. Appellant was deprived of his constitutional right to a fair trial where he was denied his Sixth Amendment right to confrontation and cross examination of police officers' reports regarding steel toe boots taken as evidence and used against him during trial.
>
> II. The cumulative effect of all errors combined in this case sufficiently deprived appellant of his constitutional right to a fair and balanced trial, where the combined nature of the errors violated the ruling in *Chambers v. Mississippi*, requiring reversal under the Fourteenth Amendment of the U.S. Constitution and Const. 1963, art 1, § 17.
>
> III. Appellant was deprived of his liberty and a fair trial where the State's witness committed perjury by testifying falsely to the events, which deprived appellant of his constitutional right to a fair trial, and the prosecution failed to correct this perjury when it appeared, requiring reversal of the conviction.

The Michigan Court of Appeals affirmed his convictions and sentences. *People v. Prescott*, No. 270917 (Mich. Ct. App. Sept. 20, 2007). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Prescott*, 480 Mich. 1033

(Jan. 22, 2008).

Petitioner then filed a petition for a writ of habeas corpus, presenting the following claims:

I.  Petitioner was deprived of his Constitutional right to a fair trial where he was denied his Sixth Amendment right to confrontation and cross examination of police officers' reports regarding a pair of steel toe books taken as evidence and used against him during the trial.

II. Petitioner was deprived of his liberty and a fair trial where the State's witness committed perjury by testifying falsely to the events, which deprived appellant of his Constitutional right to a fair trial, and the prosecution failed to correct this perjury when it appeared in the trial, requiring relief and reversal of the conviction.

III. The cumulative effect of all errors combined in this case sufficiently deprived Petitioner of his Constitutional right to a fair and balanced trial where the combined nature of the errors violated the ruling in *Chambers v. Mississippi*, requiring reversal under the Fourteenth Amendment of the United States Constitution, and Michigan's Constitution, 1963, Art 1, § 17.

The Respondent filed his Answer in Opposition to Petition for Writ of Habeas Corpus on September 24, 2008. The Petitioner filed his Reply Brief to the Respondent's Answer on November 7, 2008.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Analysis

### A. Confrontation Clause Claim

Petitioner's first claim for habeas corpus relief alleges that he was denied his Sixth Amendment rights under the Confrontation Clause when the trial court admitted a pair of steel-toed boots into evidence without admitting Officer Sukovich's and Officer Burkhardt's police reports. The Petitioner also claims that his rights were denied when Officer Sukovich testified that she took the boots because "Officer Burkhardt made contact with us and told us that [the Petitioner] had kicked [the victim] in the face." Tr., 1/20/09, p. 114. The Petitioner claims that because Officer Burkhardt already had testified, he was unable to cross-examine Officer Burkhardt regarding the out-of-court statement referenced by Officer Sukovich.

The Petitioner's claim was denied by the Michigan Court of Appeals:

> [The] defendant challenges Officer Burkhardt's testimony and the boots admitted into evidence on the basis that Officer Burkhardt did not seize the boots herself, but instead relied on the information from Officer Sukovich that the boots were the ones used in the assault. According to the defendant, both Officer Burkhardt's and Officer Sukovich's police reports should have been placed in evidence for the purpose of confrontation and cross-examination regarding the seized boots. However, both officers testified at trial and [the] defendant unquestionably had the opportunity to question them regarding their direct testimony and any police [report] they had authored.

*People v. Prescott*, No. 270917 at 3.

In support of his claim, the Petitioner relies on *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the defendant was tried for stabbing a man who allegedly raped the defendant's wife. After the defendant was arrested, the police interrogated his wife. During the interrogation, she made a statement that incriminated her husband. When she refused to testify at trial, the state introduced her recorded statement as evidence against her husband. The trial court allowed the statement, but the United States Supreme Court reversed the conviction, holding that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *See id.* at 53-54. The Court also stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9.

The Petitioner claims that the introduction of the steel-toed boots without the officer's police reports, and the order in which the witnesses were presented, violated his rights under the Confrontation Clause. Both officers testified at his trial. The Petitioner was afforded an opportunity to cross-examine them regarding their statements and their collection of any evidence against him. While the Michigan Court of Appeals did not specifically cite to *Crawford*, its decision that the

Petitioner's rights under the Confrontation Clause were not violated because both officers testified at trial was not contrary to, or an unreasonable application of, the Supreme Court's ruling in *Crawford*.

In addition, while the Sixth Circuit has not specifically addressed the issue, the Confrontation Clause is not triggered by the introduction of physical evidence. *See U.S. v. Sherrod*, 964 F.2d 1501, 1507 n.18 (5th Cir. 1992) (citing *United States v. Herndon*, 536 F.2d 1027, 1029 (5th Cir. 1976) and *United States v. Gordon*, 580 F.2d 827, 837 (5th Cir.) *cert. denied*, 439 U.S. 1051 (1978)) ("[T]he Confrontation Clause is restricted to 'witnesses' and does not include physical evidence."); *see also United States v. Williams*, No. 92-30048, 1993 WL 2319, *7 n.5, 983 F.2d 1080 (9th Cir. 1993) (citing *Herndon*, 536 F.2d at 1029) (holding that a defendant's "rights under the Confrontation Clause are not triggered by physical evidence, only by 'witnesses'"). Thus, the admission of the boots themselves did not implicate the Confrontation Clause.

Moreover, as the state court also concluded, "the defendant does not dispute that the boots belonged to him or were removed from his feet at the hospital, in the presence of a police officer, and then placed into police custody." *Id.* at 3. Any error relating to the introduction of the boots as evidence would be harmless.

In further support of his claim, the Petitioner relies on *People v. McDaniel*, 469 Mich. 409 (2003). In *McDaniel*, the defendant was charged with selling drugs. At trial, the state introduced a lab report, indicating that the package sold by the defendant contained heroin. The chemist who had actually performed the test was unavailable, so the state introduced the report through another chemist from the same lab. The trial court allowed the evidence under Michigan Rule of Evidence 803(8), but the Michigan Supreme Court reversed, stating that the report was not a public record

because it was created in a setting that was adversarial to the defendant. *Id.* at 413 (citing *People v. Mass*, 464 Mich. 615, 625-626 (2001)). The Petitioner's reliance on *McDaniel* is unpersuasive because the Michigan Supreme Court's holding in *McDaniel* is based on state law, and a claimed violation of state law is non-cognizable on federal habeas review. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

### B.  Prosecutorial Misconduct Claim

Next, the Petitioner claims that the prosecutor knowingly admitted false testimony when he allowed Barbara Contreras to testify that the Petitioner kicked the victim more than one time. During Contreras's testimony, the following exchange took place between the prosecutor and Contreras:

> Q: And where was this man with reference to the woman who was laying on the ground?
>
> A: When I looked up and see him, he was right by her. He was stomping on her with his feet.
>
> Q: Okay, and when you say stomping, how many times did you see -
>
> A: Oh, several, several times. I'd say at least 10 times. And then, he did it about 10 times and then he left and started across the street, then he turned around and came back and kicked her a couple more times. Then he left and got on his bike and took off.

Tr., 1/20/06, pp. 94-95

Prosecutors may not deliberately deceive a court or jurors by presenting known false evidence, nor allow unsolicited false evidence to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 153 (1972). "To prevail on a false-testimony claim, [a habeas petitioner] must show (1) that the prosecutor presented false testimony, (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005). "The statement in question

[must be] indisputably false, rather than merely misleading," *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (internal quotation omitted).

The Petitioner argues that Contreras's trial testimony was obviously false because it contradicted the testimony of other witnesses, including the victim, and because the physical evidence does not support her testimony. The Petitioner's claim was addressed by the Michigan Court of Appeals:

> Defendant's second argument, that a state's witness committed perjury and deprived defendant of his right to a fair trial, also fails. Defendant contends that witness Ms. Contreras testified that she saw defendant kick the victim in the face at least ten times, while the victim herself and the victim's daughter testified that he kicked her in the face once. According to defendant, the only conclusion is that Ms. Contreras committed perjury and the fact that the trial court and the prosecutor relied on this perjured testimony deprived him of fair trial. Even absent Ms. Contreras testimony, however, there was sufficient evidence to fairly convict defendant of assault with intent to do great bodily harm.
>
> A conviction for assault with intent to do great bodily harm less than murder, MCL 750.84, requires proof of: "(1) an attempt of threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha,* 227 Mich App 236, 239; 575 NW2d 316 (1997). An intent to do great bodily harm less than murder has been defined as an intent to do serious injury of an aggravated nature, *People v Mitchell,* 149 Mich App 36, 39; 385 NW2d 717 (1986), and can be inferred from the defendant's conduct, *Parcha, supra* at 239.
>
> Several witnesses testified that defendant kicked the victim in the face with steel-toed boots. One kick in the face with such boots, alone, could be construed as an intent to inflict serious injury upon the victim. In addition, contrary to defendant's assertion otherwise, the victim did not unequivocally testify that defendant kicked her only once. The victim instead testified that she was *unsure* whether defendant kicked her more than once. Thus, an allegation that Ms. Contreras testified falsely is mere speculation, and if the testimony were false, there is nevertheless no indication that such false testimony deprived defendant of a fair trial.

*People v. Prescott*, No. 270917 at 3-4.

The Petitioner's argument relies on the following: (1) Contreras testified that the petitioner

kicked the victim at least ten times while the victim and her daughter testified that he kicked her only one time, and (2) the victim's injuries would have been more severe if he had kicked her more than once. Other than the Petitioner's conclusory argument, no evidence has been presented to prove that the victim's injury is inconsistent with Contreras's testimony. While any discrepancy in the testimony of the three eye-witnesses may be compelling, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

The Petitioner has not shown that any statements made by Contreras at trial were actually false. Moreover, the Petitioner has failed to show that the testimony by Contreras was material. The Petitioner argues that the testimony was material because the trial judge, as fact finder, stated, "I'm satisfied he kicked her repeatedly in the head and face, causing the injuries . . . ." Tr., 1/23/06, p. 35. Nevertheless, the judge also stated,

> Now, there's been a great deal of argument here over whether or not there was one kick or multiple kicks. I do think we should be clear that for assault with intent to do great bodily harm, there is no requirement for multiple kicks. I mean, one kick can be enough.

Tr., 1/23/06, p. 33. The judge was satisfied that one kick to the head with a steel-toed boot could be considered assault with intent to do great bodily harm. Therefore, any testimony by Ms. Contreras that the Petitioner kicked the victim multiple times was not material.

The Michigan Court of Appeals found that the petitioner's claim of perjury was mere speculation and that the testimony was not material. The Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Thus, this claim is meritless.

### C. Cumulative Error

Finally, the Petitioner claims that the cumulative effect of all errors deprived him of his constitutional right to a fair trial. The Michigan Court of Appeals reviewed this claim and, finding no individual errors, also found no cumulative error and denied the claim. *People v. Prescott*, No. 270917 at 4.

As the Courts agrees that there was no constitutional error, this argument lacks merit. That is, zero plus zero equals zero.

## V. Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated: October 21, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 21, 2009, by electronic and/or ordinary mail.

S/THERESA E. TAYLOR
Case Manager

11